MARIANNE C. LANUTI, SBN 007784
**Law Offices of Marianne C. Lanuti**
194 Inveraray Court
Henderson, NV  89074
Tel: 702.501-1147
Fax: 702.270-2346
Nvkidslaw@gmail.com

TODD BOLEY, CA Bar No. 68119
**Law Offices of Todd Boley**
2831 Mariner Square Dr., Ste 280
Alameda, CA 94501
Telephone: (510) 836-4500
Facsimile: (510) 649-5170
(to be admitted *Pro Hac Vice*)

PETER W. ALFERT, CA Bar No. 83139
**HINTON, ALFERT PC**
200 Pringle Ave., Suite 450
Walnut Creek, California  94596
Telephone: (925) 279-3009
Facsimile:  (925) 279-3342
(to be admitted *Pro Hac Vice*)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BROOK M. HURD, GERALDINE C. HURD, AND M.H., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, BROOK M. HURD;  LUIS O. VILLALOBOS; OLIVIA N. ESPINOZA; AND L.M.V., A MINOR, BY AND THROUGH HIS GUARDIAN AD LITEM OLIVIA N. ESPINOZA; <br><br> Plaintiffs, <br><br> v. <br><br> CLARK COUNTY SCHOOL DISTRICT, JAMES P. DORAN, SHAWN PAQUETTE, AND KRISTY KELLER <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DAMAGES** <br><br> [JURY DEMAND] |

///

**INTRODUCTION**

Plaintiffs BROOK M. HURD ("**B. HURD**"); GERALDINE C. HURD ("**G. HURD**");
M.H., a minor, by and through her guardian ad litem, B. HURD ("**MH**"); LUIS O.
VILLALOBOS ("**VILLALOBOS**"); OLIVIA N. ESPINOZA ("**ESPINOZA**"); and L.M.V., a
minor, by and through his guardian ad litem OLIVIA N. ESPINOZA ("**LMV**") allege as follows:

**PARTIES**

1.      Plaintiff MH is a minor and a resident of Clark County, Nevada.

2.      Plaintiff B. HURD is a parent of Plaintiff MH and a spouse of Plaintiff G.  HURD
and is a resident of Clark County, Nevada.  He brings this action on his own behalf and as
guardian ad litem on behalf of his daughter, MH.

3.      Plaintiff G. HURD is a parent of Plaintiff MH and a spouse of Plaintiff B.  HURD
and is a resident of Clark County, Nevada.  She brings this action on her own behalf.

4.      Plaintiff LMV is a minor and a resident of Clark County, Nevada.

5.      Plaintiff ESPINOZA is a parent of Plaintiff LMV and a spouse of Plaintiff
VILLALOBOS and a resident of Clark County, Nevada.  She brings this action on her own
behalf and as guardian ad litem on behalf of her son, LMV.

6.      Plaintiff VILLALOBOS is parent of Plaintiff LMV and a spouse of Plaintiff
ESPINOZA and is a resident of Clark County, Nevada.  He brings this action on his own behalf.

7.      Defendant CLARK COUNTY SCHOOL DISTRICT ("CCSD") is a public entity
duly incorporated and operating under Nevada law as a school district.

8.      Defendant JAMES P. DORAN ("DORAN") was at all times relevant herein,
employed by Defendant CCSD as a special education teacher at Forbuss Elementary School
("Forbuss") in Las Vegas, Nevada.  All actions by Defendant DORAN alleged herein were taken
under color of state law and in the course and scope of his employment with Defendant CCSD.

9.      Defendant SHAWN PAQUETTE ("PAQUETTE") was at all times relevant
herein, employed by Defendant CCSD as the principal at Forbuss.  All actions by Defendant
PAQUETTE alleged herein were taken under color of state law and in the course and scope of
his employment with Defendant CCSD.

10. Defendant KRISTY KELLER ("KELLER") was employed by Defendant CCSD at all times relevant herein as the Assistant Chief Student Achievement Officer, and was responsible for Defendant DORAN's placement. All actions by Defendant KELLER alleged herein were taken under color of state law and in the course and scope of her employment with Defendant CCSD.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

11. This court has original jurisdiction over Plaintiffs' claims for relief pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). This court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

12. CCSD is a public entity subject to Title II of the Americans with Disabilities Act of 1990, the requirements of the Rehabilitation Act of 1973,., and to all other legal requirements referred to in this Complaint. In enacting Title II of the Americans with Disabilities Act, Congress validly abrogated state sovereign immunity, and thus CCSD may be sued pursuant to Title II. *Hason Med. Bd. Of California*, 279 F.3d 1167, 1170 (9th Cir. 2002). By accepting Federal Rehabilitation Act funds, CCSD waived its sovereign immunity under the Eleventh Amendment to claims brought pursuant to Section 504 of the Rehabilitation Act of 1973. *Pugliese v. Dillenberg*, 346 F.3d 937 (9th Cir. 2003).

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Clark County, Nevada.

14. This case arose in Clark County, Nevada, and, pursuant to Rule 1-6 of the Local Rules of the Nevada District should be assigned to the Southern Division of the Nevada District.

## FACTUAL ALLEGATIONS

A. **Allegations Common to All Plaintiffs**

15. At all times relevant to the allegations herein, MH and LMV were each special education students at Forbuss and entrusted to the care of Defendants.

16. LMV and MH were each assigned to the special education classroom of DORAN beginning on or about August 24, 2014.

17. Both LMV and MH have been diagnosed with Autism Spectrum Disorder, are non-verbal and suffer from developmental delays and intellectual disability.

18.     During their time in his class, DORAN routinely subjected both LMV and MH to a litany of physical and verbal abuses.

19.     On information and belief, Plaintiff LMV was subjected to a variety of unconscionable abuses, including being pushed and grabbed, having his hands forcefully slapped and hit, and being thrown into classroom furniture.  One teaching assistant later recalled an incident in the classroom where DORAN grabbed LMV's hands, threw them forcefully down, and said "nice hands" to him.

20.     On information and belief, Plaintiff MH was also forcibly and directly abused by DORAN, including occasions where she was grabbed and shoved into a wall.  On another occasion, DORAN grabbed Plaintiff MH by the hair and lifted her off the floor in response to MH having rested her head on her desk.

21.     LMV and MH experienced the abuse directly and also observed other students being slapped, grabbed, pinched, violently restrained, and verbally abused.  Upon information and belief, these included instances where DORAN pinched a child on the face and another where DORAN purposefully stomped on a child's foot.

22.     The use of aversive intervention is expressly prohibited by state law, which provides that "[a] person employed by the board of trustees of a school district or any other person shall not use any aversive intervention on a pupil with a disability." Nev. Rev. Stat. Ann. § 388.497.  The term "aversive intervention" is defined broadly and includes the use of corporal punishment as well as verbal and mental abuse where those actions are used to punish or to eliminate, reduce or discourage maladaptive behavior of a student with a disability. Nev. Rev. Stat. Ann. § 388.473.  Aversive interventions, physical or mechanical restraints on students with disabilities are also proscribed under District regulations. CCSD Regulation 5141.3.

23.     State law mandates that school districts must provide training to staff regarding the use of physical and mechanical restraint to ensure the safety of pupils in their care. Nev. Rev. Stat. Ann. § 388.505.  Any person who intentionally uses aversive intervention on a pupil with a disability is subject to disciplinary action. Nev. Rev. Stat. Ann. § 388.506.

///

24.     Any incident involving an "aversive intervention" must be reported to the board of trustees of the school district not later than 24 hours after the incident occurred, or as soon thereafter as it is discovered. Nev. Rev. Stat. Ann. § 388.508.  The board of trustees and school superintendent must then develop a corrective action plan "to ensure that within 30 calendar days appropriate action is taken by the school and the board of trustees to prevent future violations." Further, any "aversive action" taken against a student with a disability must be entered into the student's cumulative record. Nev. Rev. Stat. Ann. § 388.513.

25.     Pursuant to CCSD Regulation 5141.3.and Nev. Rev. Stat. Ann.§ 388.501, if a physical restraint or aversive intervention has been used on a student, it must be reported in the pupil's file no later than one working day after the fact.  A report (form CCF-624) must also be sent to the student's Individualized Education Program (IEP) Team, the student's parent or guardian, and the Board of School Trustees/designee of the school district.

26.     The District repeatedly failed to comply with state law and school policy regarding the prompt documentation of the use and nature of aversive interventions in LMV and MH's cumulative records.  Further, the District repeatedly failed to report in a timely manner the use of aversive interventions to either the minor plaintiffs' parents or their respective IEP Teams, in violation of Nev. Rev. Stat. Ann.§ 388.501.  In fact, a number of incidents involving the minor plaintiffs were never documented in their school records nor were the incidents ever reported to their parents.

27.     On information and belief, PAQUETTE, KELLER and other District administrators were aware of what was going on in DORAN's classroom, but failed to take prompt action to protect the children in their care or to report the abuse to law enforcement or to parents.

28.     At all times relevant hereto, LMV and MH never engaged in behavior that rose to the level of an emergency of serious or imminent threat of harm to themselves or others that would justify grabbing them or restraining their freedom of movement.

29.     In or around May 2015, the families of LMV and MH each received separate reports (form CCF-624) from the District that DORAN had used aversive interventions on their

children.  When the parents asked for more information, the District actively tried to minimize the nature of the abuse and told LMV and MH's parents that the incidents involving their children were "one-time only" occurrences.  On information and belief, these representations were knowingly false.  Further, at no time did the District disclose to the parents that DORAN was the subject of a criminal investigation into allegations of abuse.

30.     On or about July 14, 2015, a criminal complaint was filed against DORAN, charging him with three counts of battery for willfully and unlawfully using force or violence upon LMV in violation NRS 200.481.  However, no one in law enforcement or at the District informed the minor plaintiffs' parents that a criminal complaint had been filed against their children's teacher.  In fact, DORAN was not arrested until approximately six weeks later on or around August 25, 2015.  In the intervening period, Defendants permitted DORAN to continue on at his special education teaching position at Forbuss Elementary, putting LMV, MH, and their classmates at further risk of abuse.

31.     The minor plaintiffs' parents were finally made aware of some of the details of abuse after it was reported in the Review Journal on August 26, 2015, that DORAN faces "abuse charges after colleagues reported that he hit and threw an autistic student who is unable to speak."  The Review Journal also reported that there were "multiple reports" of abuse during April of 2015.

32.     Even after DORAN's arrest, the District has persisted in its policy of active concealment, refusing to disclose details of the abuse to the minor plaintiffs' parents, despite repeated entreaties to do so.  To date, upon information and belief, despite being fully aware of the extent of the abusive acts perpetrated by DORAN, none of the parents of any children subject to abuse, including the plaintiffs, have been formally notified by the District regarding what was going on in DORAN's classroom.

33.     As a proximate result of the actions of DORAN and of the actions of PAQUETTE and KELLER, LMV and MH did each suffer unjustifiable physical pain and mental suffering.

///

///

**34.** Plaintiffs have exhausted their administrative remedies under the Individuals with Disabilities Education Act and all issues under the Act have been fully resolved. Plaintiffs do not seek any services or remedies available under the Act.

**B.   Allegations Specific to Plaintiffs LMV, VILLALOBOS and ESPINOZA**

**35.** LMV was born in 2005 and was nine years old when he was assigned to DORAN'S special education classroom in the fall of 2014.

**36.** Prior to attending DORAN's class, LMV had enjoyed going to school. However, in or around the beginning of the 2014-2015 school year, LMV's parents began to sense that something was wrong. LMV would often want to return home with his mother when he saw her on school grounds, which he did not do prior to his placement in DORAN's class.

**37.** During the months that LMV was in DORAN's classroom, LMV began exhibiting self-harming behaviors, such as hitting himself on the head and scratching himself. He also began acting aggressively towards other family members, including scratching them. The aggression towards others was particularly noticeable whenever LMV was touched on the face, patted on the back, or confronted by someone making a loud noise. The aggression and ultra-sensitivity were uncharacteristic for LMV and were behaviors that had not been exhibited before.

**38.** LMV's parents became concerned about their son's disturbing behavior. However, due to his disabilities, LMV was unable to articulate the cause of his distress to his parents.

**39.** The extent and duration of the abuse suffered by LMV is unknown to Plaintiffs at this time; however, at least one incident is known to have occurred in or around April 27, 2015, when LMV's hands were grabbed and slapped by DORAN. The use of force was used in a circumstance where no emergency condition existed and was such a serious violation of school policy as to justify personnel action being taken against DORAN.

**40.** On or around May 2, 2015, PAQUETTE sent LMV's parents an email stating that DORAN "may" have used an aversive interaction with another student, but that "[LMV] was not involved."

41.     On or around May 11, 2015, an IEP was held on behalf of LMV, which was attended by LMV's parents.  Employees and/or contractors of CCSD who were present at the IEP included: DORAN; Jerrell Hall, representative of CCSD; Leslie Wolf, LMV's general education teacher; Jessica Tarantino, LMV's adapted physical education teacher; Lyann Materna, LMV's in-school speech pathology therapist; and Stacey Schnebelen.  On information and belief, at least some members of the IEP team were aware of the April 27, 2015 slapping incident, but did not disclose it to LMV's parents.  Further, the incident had not been entered into LMV's cumulative record.  This was a violation of state law and District regulations.

42.     On or around May 11, 2015, PAQUETTE sent LMV's parents a CCF-624 Notice of Physical Restraint, Mechanical Restraint, or Aversive Intervention.  The Notice stated that a Teaching Assistant had witnessed DORAN "slapping" LMV's hand on April 27, 2015.  The notice indicated that no emergency condition existed and that there was a need for personnel action.  The Notice was sent fourteen days after the incident.  LMV's parents were extremely confused and upset, given the delay in receiving the report as well as PAQUETTE's earlier representation that their son hadn't been involved in any kind of aversive intervention.

43.     On or around May 12, 2015, LMV's parents contacted PAQUETTE seeking an explanation regarding the delay in reporting as well as the earlier contradictory information he had provided.  PAQUETTE maintained that any delay in reporting was by no fault of his own and refused to discuss the matter any further.

44.     On or about May 15, 2015, based in part on their concern for their son's safety and wellbeing, LMV's parents filed a due process complaint against the District with the Nevada Department of Education.  On or around the same day, LMV's parents also requested copies of any and all form CCF-624 Notices of Physical Restraint, Mechanical Restraint, or Aversive Intervention relating to LMV or any other students in DORAN's classroom.  LMV's parents were told by PAQUETTE that the only aversive intervention involving LMV was the slapping incident from April 27, 2015, which PAQUETTE dismissed as "insignificant."  LMV's parents were told that there had been one other "isolated" incident involving another student and DORAN in April 2015, but that DORAN was "star" instructor and additional measures would be

"immediately" implemented to ensure the safety of the children in the classroom.

45.     On or about May 27, 2015, a resolution was conducted between LMV's parents and the District in connection with their due process complaint.  The District told LMV's parents that all aversive intervention reports had been disclosed to them; that LMV had only been involved in the one incident dating from April 27, 2015 which consisted of DORAN slapping "[LMV's] right hand away"; and that there had been only one other aversive intervention in DORAN's classroom, which occurred in late April and involved a different student.  It was not until after DORAN's arrest several months later that LMV's parents learned that the District's representations to them were false.

46.     On or about May 30, 2015, counsel for LMV and his parents contacted KELLER, who was responsible for DORAN's placement and was PAQUETTE's supervisor to ask that DORAN not be permitted to return to the classroom.  KELLER refused to take any action to prevent DORAN's return to Forbuss Elementary.

47.     On or about June 18, 2015, LMV's parents and the District reached a resolution agreement regarding their due process complaint wherein the District agreed that LMV would be provided with additional adult supervision at all times.

48.     On or about July 14, 2015, a criminal complaint was filed against DORAN for three counts of willfully and unlawfully using force or violence upon LMV, and a warrant was issued for his arrest.  DORAN was not arrested by police until on or around August 25, 2015.  In the meantime, DORAN continued to teach at Forbuss.  Defendants took no measures to protect the minor plaintiffs or their classmates.  Further, LMV's parents were never notified by anyone at the school regarding the criminal complaint or arrest warrant.

49.     Both of LMV's parents are devastated about what happened to their son.  Moreover, they feel that they have been mistreated by the District because of its failure to communicate to them what was going on with respect to their son and DORAN.

50.     Since leaving DORAN'S classroom, LMV continues to experience anxiety, stress and fear that were caused by the Defendants' conduct and/or failure to act.  On information and belief, LMV will need psychological treatment to address the trauma he has experienced.

**C.    Allegations Specific to Plaintiffs MH, B. HURD and G. HURD**

**51.**    MH was born in 2005 and was nine years old when she was assigned to DORAN's classroom.

**52.**    Prior to attending DORAN's class, MH had enjoyed going to school.  However, in or around the beginning of the 2014-2015 school year, LMV's parents began to sense that something was wrong.

**53.**    During the months that MH was in DORAN's classroom, MH's behavior underwent significant adverse changes.  MH's parents observed a decline in attention and increased avoidance.  In addition, MH began exhibiting certain self-harming behaviors, such as hitting herself in the face, arms, and legs.  MH's parents observed that this would happen most often when MH knew she had done something wrong.  These symptoms and behaviors were not present in the same severity or degree, if at all, prior to the 2014-2015 school year.

**54.**    MH's parents became concerned about their daughter's changed behavior.  However, due to her disabilities, MH was unable to articulate the cause of her distress to her parents.

**55.**    The extent and duration of the abuse suffered by MH is unknown to Plaintiffs at this time; however, at least one incident occurred in or around April 28, 2015, when DORAN approached MH as she sat with her head resting on her desk and forcefully pulled her by the hair, lifting her from the desk.

**56.**    On or about May 2, 2015, PAQUETTE sent an email to MH's parents that DORAN "may" have used an aversive intervention with another student in MH's class, but that "[MH] was not involved in the incident."

**57.**    On or about May 11, 2015, PAQUETTE sent MH's parents a CCF-624 Notice of Physical Restraint, Mechanical Restraint, or Aversive Intervention.  The Notice stated that a Teaching Assistant had witnessed DORAN pulling MH's hair on or around April 28, 2015.  The Notice indicated that no emergency condition existed and that there was a need for personnel action.  The Notice was sent almost two weeks after the date of the incident, in violation of District regulations and state law.  The same day, MH's parents spoke to PAQUETTE by phone who explained that DORAN had pulled MH's hair "to force attention during class."

**58.** On or about May 13, 2015, B. HURD spoke with VILLALOBOS, who indicated that he too had received a notice of aversive intervention involving his child (LMV) and DORAN. Worried for his child's safety and wellbeing, MH's parents contacted PAQUETTE and demanded an explanation.

**59.** On or about May 15, 2015, MH's parents had a meeting with PAQUETTE. DORAN was also present. PAQUETTE attempted to having downplayed the severity of the incident, explaining that it occurred because of a "lack of training." PAQUETTE explained that DORAN and his Teaching Assistant were attending classes and promised that an incident of this kind would never happen again.

**60.** On or about July 14, 2015, a criminal complaint was filed against DORAN for three counts of willfully and unlawfully using force or violence upon LMV, and a warrant was issued for his arrest. DORAN was not arrested by police until on or around August 25, 2015. In the meantime, DORAN continued to teach at Forbuss. Defendants took no measures to protect the minor plaintiffs or their classmates. Further, MH's parents were never notified by anyone at the school regarding the criminal complaint or arrest warrant.

**61.** Both of MH's parents are devastated about what happened to their daughter. Moreover, they feel that they have been mistreated by the District because of its failure to communicate to them what was going on with respect to their daughter and DORAN.

**62.** Since leaving DORAN'S classroom, MH continues to experience anxiety, stress and fear that were caused by the Defendants' conduct and/or failure to act. For instance, MH will hit herself repeatedly while screaming "No Mr. Doran" when MH is told by her parents that it's time for school. MH's parents have done their best to discourage this behavior by assuring her that DORAN will not be there ever again.

**63.** On information and belief, MH will need psychological treatment to address the trauma she has experienced.

///

///

///

### FIRST CLAIM FOR RELIEF
#### Violation of Constitutional Rights, 42 U.S.C. § 1983
#### Plaintiffs LMV and MH vs. DORAN and PAQUETTE

**64.**     Plaintiffs refer to, and incorporate by reference, all of the preceding paragraphs as though fully set forth herein.

**65.**     LMV and MH have a constitutional right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and to be secure in their persons and to maintain their bodily integrity against unreasonable assaults of their persons.

**66.**     LMV and MH have a constitutionally protected liberty interest under the Fourteenth Amendment in personal security, bodily integrity and freedom from unjustified intrusions on their personal security, including bodily restraint and punishment without due process of law.

**67.**     DORAN violated LMV and MH's rights under the Fourth Amendment and Fourteenth Amendment by using unjustified and unreasonable force against them.

**68.**     DORAN's conduct was objectively unreasonable under the circumstances and in light of the educational objectives LMV and MH were trying to achieve.

**69.**     DORAN's conduct in physically seizing LMV and MH unlawfully subjected them to excessive, unreasonable, and unnecessary physical force.

**70.**     PAQUETTE violated the rights of LMV and MH under the Fourth and Fourteenth Amendments to the U.S. Constitution by actions, including but not limited to, acting with deliberate indifference to the risk of harm to LMV and MH from DORAN.  PAQUETTE personally participated in the deprivation of constitutional rights of LMV and MH by his failure to act in response to allegations of serious child abuse by DORAN.

**71.**     The actions of DORAN and PAQUETTE as described above, were objectively unreasonable, willful and wanton, in light of the facts and circumstances.

**72.**     As a proximate result of the violations alleged hereinabove, Plaintiffs have suffered damages as herein alleged.

///

///

**SECOND CLAIM FOR RELIEF**
**Discrimination in Violation of the Americans With Disabilities Act, USCA §§ 12101**
**Plaintiffs LMV and MH v. CCSD**

**73.**     Plaintiffs refer to, and incorporate by reference, all of the preceding paragraphs as though fully set forth herein.

**74.**     Effective January 26, 1992 Title II of the Americans with Disabilities Act of 1990, entitled each of LMV and MH to the protections of the "Public Services" provision.  Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 USC § 12131, section 201 of the ADA.

**75.**     Pursuant to 42 USC §12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity. LMV and MH were at all times relevant herein qualified individuals with a disability as therein defined.

**76.**     By subjecting the minor plaintiffs to ongoing physical and verbal abuse, LMV and MH were unable to enjoy the benefits of education.  In addition, non-disabled children were not subjected to similar acts of abuse.

**77.**     CCSD has failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described hereinabove, including failing to ensure that educational services are provided on an equal basis to children with disabilities and free of hostility toward their disability.

**78.**     CCSD has further failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described hereinabove by subjecting LMV and MH to a hostile educational environment.

**79.**     DORAN was deliberately indifferent to the risk that his actions would deprive the minor plaintiffs of equal and meaningful access to education.

**80.**     On information and belief, PAQUETTE was deliberately indifferent to the complaints of the abuse committed by DORAN because the victims of his abuse, including LMV and MH, were persons with a disability.  Furthermore, PAQUETTE was informed by others that

LMV and MH were abused by DORAN.  Despite this knowledge, PAQUETTE did nothing to stop the ongoing abuse for months, and in fact actively misled the parents of LMV and MH as to the severity and frequency of the abuse by DORAN, and as to DORAN's competency. Furthermore, even after police initiated an investigation of DORAN and a criminal complaint was filed, PAQUETTE caused and allowed DORAN to continue in his role as a teacher in the classroom of LMV and MH, which, on information and belief caused them to suffer further physical pain and mental suffering.

**81.**     On information and belief, KELLER was deliberately indifferent to the complaints of the abuse committed by DORAN because the victims of his abuse, including LMV and MH, were persons with a disability. KELLER was informed by others that LMV and MH were abused by DORAN.  Despite this knowledge, KELLER did nothing to stop the ongoing abuse. Furthermore, even after DORAN's abuse was reported to police, KELLER caused and allowed DORAN to continue in his role as a teacher in the classroom of LMV and MH, which, on information and belief, caused them to suffer further physical pain and mental suffering.

**82.**     This deliberate indifference by employees of CCSD gives rise to respondeat superior liability of CCSD.

**83.**     As direct and proximate result of CCSD's failure to comply with their duty under Title II, LMV and MH have suffered damages, including special and general damages, according to proof.

<u>**THIRD CLAIM FOR RELIEF**</u>
**Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 504**
**Plaintiffs LMV and MH vs. CCSD**

**84.**     Plaintiffs incorporate and reallege by reference all the foregoing paragraphs as if they were fully set forth herein.

**85.**     Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794 ("Section 504"), and the regulations promulgated thereunder prohibit discrimination against persons with disabilities. Section 504 prohibits the exclusion from the participation in, or being denied the benefits of, or being subjected to discrimination under, any program or activity receiving Federal financial assistance.

86.     Plaintiffs are informed and believe and thereon allege that CCSD is and has been at all relevant times the recipient of federal financial assistance, and that part of that financial assistance has been used to fund the operations, construction and/or maintenance of the specific public facilities described herein and the activities that take place therein.

87.     By subjecting the minor plaintiffs to ongoing physical and verbal abuse, LMV and MH were unable to enjoy the benefits of education.  In addition, non-disabled children were not subjected to similar acts of abuse.

88.     By its actions or inactions in denying equal access to educational services and by-subjecting LMV and MH to a hostile educational environment, CCSD has violated the rights of LMV and MH under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder.

89.     DORAN was deliberately indifferent to the risk that his actions would deprive the minor plaintiffs of equal and meaningful access to education.

90.     CCSD is vicariously liable for the actions or inactions of its employees. PAQUETTE and KELLER were deliberately indifferent to the abuse committed by DORAN. They had actual knowledge of the ongoing abuse and knew that DORAN was likely to continue abusing LMV and MH but failed to act upon that knowledge.

91.     This deliberate indifference by employees of CCSD gives rise to respondeat superior liability of CCSD.

92.     As a proximate result of CCSD's failure to comply with their duty under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and the regulations promulgated thereunder, LMV and MH have suffered damages as described herein.

### FOURTH CLAIM FOR RELIEF
**Battery**
**Plaintiffs LMV and MH vs. Defendant DORAN**

93.     Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

///

94.    The use of force, as alleged herein, by DORAN against minor Plaintiffs constituted a battery.

95.    As a proximate result of DORAN's battery, LMV and MH suffered damages as alleged herein.

## FIFTH CLAIM FOR RELIEF
### Criminal Violations Motivated by Characteristics of Victim, NRS § 41.690
### Plaintiffs LMV and MH vs. Defendant DORAN

96.    Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

97.    The use of force, as alleged herein, by DORAN against LMV and MH constituted willful violations of NRS §§ 200.400, 200.481 and 200.508.

98.    On information and belief, DORAN's willful violations of these provisions as they relate to Plaintiffs LMV and MH were motivated by the actual or perceived disabilities of said Plaintiffs.

99.    As a proximate result, LMV and MH suffered damages as alleged herein.

100.    Additionally, based on DORAN's violations of NRS § 41.690, Plaintiffs are entitled to costs, attorneys' fees, and punitive damages.

## SIXTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### Plaintiffs LMV, MH, B. HURD, G. HURD, VILLALOBOS and ESPINOZA vs. Defendants DORAN, PAQUETTE, KELLER, and CCSD

101.    Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

102.    On information and belief, in subjecting LMV and MH to abuse as alleged herein, DORAN engaged in extreme and outrageous conduct beyond the bounds tolerated in a decent society.  In particular, DORAN was an adult and the teacher of LMV and MH, who were young children with disabilities.  As a result, DORAN was in a position of authority.  LMV and MH were particularly vulnerable because of their age and disabilities, such as being nonverbal. DORAN knew that LMV and MH were particularly vulnerable and knew that his abuse of LMV

and MH would likely result in harm to them due to mental distress.

**103.**    On information and belief, in committing the violent acts alleged herein DORAN acted with the intent to cause LMV and MH extreme emotional distress, or at a minimum, acted with a reckless disregard as to whether such actions would cause such extreme emotional distress.

**104.**    On information and belief, PAQUETTE and KELLER had actual knowledge of the violent acts committed against LMV and MH by DORAN, yet failed to take steps to stop or prevent further acts of violence. Such conduct is outrageous.  On information and belief, PAQUETTE and KELLER took advantage of LMV and MH's disabilities by attempting to cover up their abuse, knowing full well that LMV and MH could not inform anyone verbally about the abuse because of their disabilities.  Defendants' conduct in this regard was outrageous and Defendants' acted either with the intent to inflict emotional distress or at a minimum, acted with a reckless disregard as to whether such actions would cause such extreme emotional distress.

**105.**    PAQUETTE and KELLER had a duty to promptly inform VILLALOBOS, ESPINOZA, B. HURD, and G. HURD after learning about the abuse, but did not do so, and PAQUETTE actively misled the parents of LMV and MH as to the severity and frequency of the abuse by DORAN, and as to DORAN's competency.  It was foreseeable that withholding this information from them would cause more emotional distress than informing them in the first place.

**106.**    CCSD is liable for injuries proximately caused by the acts or omissions of its employees acting within the scope of their employments. *See* NRS 41.031, NRS 41.038.

**107.**    As a proximate result of each Defendants' intentional acts, Plaintiffs have incurred damages as alleged herein.

<u>**SEVENTH CLAIM FOR RELIEF**</u>
**Negligence**
**Plaintiffs LMV, MH, B. HURD, G. HURD, VILLALOBOS and ESPINOZA vs.**
**Defendants DORAN, PAQUETTE, KELLER, and CCSD**

**108.**    Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

**109.**    Defendants and each of them owed a duty to exercise reasonable care in their interactions with each plaintiff.

**110.**    A special relationship existed between each of Defendants and each of Plaintiffs, which arose from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel.  CCSD owed a duty to exercise reasonable care to prevent harm to LMV and MH at the hands of anyone, including DORAN negligently or intentionally.

**111.**    Furthermore, upon learning that DORAN had been suspected of abusing students, the duty to exercise reasonable care to prevent further harm to LMV and MH included a duty to disclose the suspected abuse to the parents of LMV and MH.

**112.**    Teachers, instructional aides, and administrative officers of the CCSD are mandatory reporters as defined by NRS § 432B.220.  As such, they were under a mandatory duty to report to a law enforcement agency or to an agency which provides child welfare services whenever any of them, in his or her professional or occupational capacity, knew or had reasonable cause to believe that had a child had been the victim of child abuse or neglect.  A mandatory reporter is required to report suspected child abuse as soon as reasonably practicable, but not later than 24 hours after the person knows or has reasonable cause to believe that the child has been abused or neglected.

**113.**    PAQUETTE and KELLER, were each at all times relevant to the allegations herein, a mandatory reporter as defined by NRS § 432B.220.

**114.**    PAQUETTE, KELLER and other teachers, instructional aides, and/or administrative officers of CCSD were each aware that children under the supervision of DORAN were victims of abuse as defined by NRS § 432B.070 and/or NRS § 432B.090 and that the abuse was ongoing; however, none of these mandatory reporters employed by the CCSD complied with their duty to report the abuse to an agency specified in NRS § 432B.220(1)(a).

**115.**    Defendants and each of them breached their duty to exercise reasonable care when interacting with Plaintiffs LMV and MH by physically and emotionally abusing said Plaintiffs and/or by failing to prevent harms to said Plaintiffs and/or by failing to train CCSD

staff that they are mandatory reporters under state law; that what DORAN was doing to minor plaintiffs was child abuse; and/or that they were supposed to report suspected child abuse immediately to the police as required by Nevada law; and/or by failing to inform B. HURD, G. HURD, VILLALOBOS and ESPINOZA of the suspected child abuse when Defendants learned of the suspected abuse.

116.    CCSD is liable for injuries proximately caused by the acts or omissions of its employees acting within the scope of their employment. *See* NRS §§ 41.031, 41.038.

117.    As a proximate result of Defendants' negligent acts, Plaintiffs have incurred damages as alleged herein.

### EIGHTH CAUSE OF ACTION
**Negligent Supervision**
**Plaintiffs LMV, MH, B. HURD, G. HURD, VILLALOBOS and ESPINOZA vs.**
**Defendants PAQUETTE, KELLER, and CCSD**

118.    Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

119.    As school personnel, PAQUETTE, KELLER and/or other CCSD supervisory employees owed students under their supervision, including LMV and MH a protective duty of care, which includes overseeing the educational environment and the performance of DORAN and taking reasonable measures to guard LMV and MH against abuse from foreseeable sources, including DORAN.

120.    On information and belief, DORAN was unfit to perform the work for which he was hired to do.

121.    On information and belief, PAQUETTE, KELLER and/or other CCSD supervisory employees knew or should have known that DORAN was abusing students at school either by personally observing the abuse or by the reports received from other school employees.

122.    DORAN's abuse of LMV and MH harmed each of them.

123.    PAQUETTE, KELLER and/or other CCSD supervisory employees' negligence in hiring, supervising and retaining DORAN was a substantial factor in causing harm to LMV and MH.

124.    CCSD is liable for injuries proximately caused by the acts or omissions of its employees acting within the scope of their employments. *See* NRS 41.031, NRS 41.038.

125.    As a proximate result of Defendants' negligent supervision of DORAN, Plaintiffs have incurred damages as alleged herein.

## NINTH CAUSE OF ACTION
### Enhanced Damages for Injury or Loss Suffered by a Vulnerable Person, NRS § 41.1395
### Plaintiffs LMV and MH vs. Defendant DORAN

126.    Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

127.    At all times relevant to this action, LMV and MH were each a vulnerable person as that term is defined by NRS § 41.1395.

128.    In committing the violent acts alleged herein, DORAN acted with recklessness, oppression, fraud and/or malice as that term is defined by NRS § 41.1395.

129.    Accordingly, Plaintiffs LMV and MH are entitled to double damages and attorneys' fees and costs against DORAN under NRS § 41.1395.

## JURY DEMAND

Plaintiffs hereby demand that this matter be tried by a jury.

///
///
///
///
///
///
///
///
///
///
///

- 20 -
COMPLAINT

## PRAYER

WHEREFORE, Plaintiffs pray for judgment as follows:

1. Compensatory damages to Plaintiffs for pain, suffering, injury, emotional distress and for medical expenses, past and future;

2. Punitive damages against Defendants DORAN, PAQUETTE and KELLER as authorized under NRS § 41.690;

3. Double Damages against Defendant DORAN under NRS § 41.1395;

4. Attorneys' fees and costs as authorized under U.S.C. § 1983, U.S.C. § 1210, U.S.C. § 504, and NRS §§ 41.690, 41.1395;

5. Prejudgment interest and post judgment interest as allowed by law; and

6. Such other and further relief as the court deems just and proper.


DATED: August 24, 2016                    LAW OFFICES OF MARIANNE C. LANUTI


By:  _/s/ Marianne C. Lanuti_____
                                                MARIANNE C. LANUTI
                                                194 Inveraray Court
                                                Henderson, NV  89074
                                                Tel: 702.501-1147
                                                Fax: 702.270-2346
                                                Nvkidslaw@gmail.com

                                                Attorneys for PLAINTIFFS

                                                To be admitted *pro hac vice*:

                                                PETER W. ALFERT, SBN 83139
                                                HINTON ALFERT & KAHN LLP
                                                200 Pringle Ave., Suite 450
                                                Walnut Creek, California 94596
                                                Telephone: (925) 279-3009
                                                Facsimile: (925) 279-3342

                                                TODD BOLEY, SBN 64119
                                                2381 Mariner Square Drive, Suite 280
                                                Alameda, California 94501
                                                Telephone: (510) 836-4500
                                                Facsimile: (510) 649-5170