**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BROOK M. HURD, *et al.*, )
                                         Plaintiffs, )     Case No.: 2:16-cv-02011-GMN-NJK
    vs. )
                                              )                  **ORDER**
CLARK COUNTY SCHOOL DISTRICT, *et al.*, )
                                         Defendants. )

Pending before the Court is the Motion to Dismiss, (ECF No. 20), filed by Defendants Clark County School District, Kristy Keller, and Shawn Paquette (collectively "Defendants"). The Motion is joined by Defendant James P. Doran, (ECF No. 30). Plaintiffs L.M.V., M.H., S.S. ("the Students") and Brook M. Hurd, Geraldine C. Hurd, Luis O. Villalobos, Olivia N. Espinoza, Zerkrollah Sanaei, and Elham Eghdamian ("the Parents") (collectively "Plaintiffs") filed a response, (ECF No. 24), and Defendants filed a reply, (ECF No. 25). For the reasons discussed herein, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**.[1]

**I.    BACKGROUND**

This action arises out of the alleged physical and verbal abuse of three special education students—M.H., L.M.V., and S.S—at Forbuss Elementary ("Forbuss"). (Am. Compl. ¶¶ 18–22, ECF No. 14). Defendant Doran ("Doran") was a Clark County School District ("CCSD") teacher at the time of the alleged abuse. (*Id.* ¶ 11). Defendant Shawn Paquette ("Paquette") was

---

[1] Also pending before the Court is Plaintiffs' Motion for Leave to File Supplemental Authority, which concerns a recent Supreme Court ruling. (ECF No. 37). Defendants responded in opposition to the extent Plaintiffs additionally submitted non-binding authority. (ECF No. 39). For good cause appearing, and recognizing the additional authority as non-binding, the Court grants Plaintiffs' Motion.

the principal at Forbuss, and Defendant Kristy Keller ("Keller") was the Assistant Chief Student Achievement Officer. (*Id.* ¶ 12, 13).

On or about August 24, 2014, the Students were assigned to Doran's special education classroom at the school. (*Id.* ¶ 19). While enrolled, Plaintiffs allege that Doran subjected the Students to a "litany of physical and verbal abuses." (*Id.* ¶¶ 23–26). With respect to L.M.V, these abuses allegedly included "being pushed and grabbed, having his hands forcefully slapped and hit, and being thrown into classroom furniture." (*Id.* ¶ 23). With respect to M.H., these abuses allegedly included being "grabbed and shoved into a wall" and lifted off the floor by her hair. (*Id.* ¶ 24). With respect to S.S., these abuses allegedly included "being grabbed hard enough to leave marks, being grabbed by the arm so hard as to cause the muscles and/or tendons and/or bones of his arm to be seriously injured, having [his] feet stepped on by DORAN [] and being kicked by DORAN as he lay on the floor." (*Id.* ¶ 25). In addition to the direct abuse, Plaintiffs allege that the Students observed Doran abuse other class members. (*Id.* ¶ 26).

Plaintiffs further allege that Paquette and Keller were aware of what was going on in Doran's classroom but "failed to take prompt action to protect the children in their care or to report the abuse to law enforcement or to parents." (*Id.* ¶ 32). While the families of L.M.V. and M.H. did eventually receive reports from CCSD that Doran had used prohibited "aversive interventions" on their children, Plaintiffs assert that Defendants tried to "minimize the nature of the abuse" by falsely telling the families that the incidents were a "one-time only" occurrence. (*Id.* ¶ 34). Furthermore, Plaintiffs assert that Defendants did not even inform the Parents that Doran was under a criminal investigation at the time. (*Id.*).

In July 2015, a formal criminal complaint was filed against Doran, charging him with three counts of battery for willfully and unlawfully using force or violence against L.M.V. (*Id.* ¶ 35). According to Plaintiffs, however, Defendants still did not inform the Parents of the

criminal charges. (*Id.*). Furthermore, during the six week intervening period between the criminal complaint and Doran's eventual arrest, Plaintiffs assert that Doran was permitted to continue teaching the students. (*Id.* ¶ 35). Plaintiffs claim that although they learned some of the details of the abuse after reading about it in a Review Journal article on August 26, 2015, Defendants have still failed to formerly notify the Parents of the extent of the abusive acts. (*Id.* ¶ 37).

On October 27, 2016, Plaintiffs filed their Amended Complaint (the "Complaint") before the Court. (ECF No. 14). In their Complaint, Plaintiffs allege a number of federal and state law causes of action, including: (1) violation of constitutional rights under 42 U.S.C. § 1983; (2) discrimination in violation of the Americans with Disabilities Act; (3) violation of the Rehabilitation Act of 1973; (4) battery; (5) criminal violations motivated by characteristics of the victim; (6) intentional infliction of emotional distress; (7) negligence; (8) negligent supervision; and (9) enhanced damages for injury or loss suffered by a vulnerable person. On December 1, 2016, Defendants filed the instant Motion to Dismiss. (ECF No. 20).

## II.     **LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added). In order to survive a motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so

requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992).

## III. DISCUSSION

In the instant Motion, Defendants argue that Plaintiffs' federal law causes of action should be dismissed because Plaintiffs failed to exhaust administrative remedies. (Mot. to Dismiss 7:6–11:19, ECF No. 20). In addition, Defendants argue that Plaintiffs' federal and state law causes of action should be dismissed for failure to state a claim. (*Id.* 11:20–19:12). Defendants further argue that, even if Plaintiffs sufficiently stated a claim, Paquette and Keller are entitled to qualified and discretionary immunity on the section 1983 claim and certain state law claims. (*Id.* 20:4–22:15). The Court addresses the sufficiency of each argument in turn.

### A. Administrative Exhaustion

Defendants argue that Plaintiffs are required to exhaust administrative remedies pursuant to the Individuals with Disabilities Education Act ("IDEA"). (*Id.* 7:7–12). In support of this argument, Defendants assert that "Plaintiffs appear to seek recovery based at least in part on allegations related to the education and educational service provided to the Student Plaintiffs." (*Id.*).

The Individuals with Disabilities Act ("IDEA"), codified at 20 U.S.C. § 1400 et seq., is a comprehensive federal scheme that "confer[s] on disabled students a substantive right to public education and provide[s] financial assistance to enable states to meet their financial needs." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir.1992). "Federal funding is conditioned upon state compliance with the IDEA's extensive substantive and

procedural requirements." *Id.* "To qualify for federal funds, the state must have in effect 'a policy that assures all children with disabilities the right of a free appropriate public education.'" *Id.* (quoting 20 U.S.C. § 1412(1)). The "free appropriate public education" is often referred to as a "FAPE." Under IDEA, the exhaustion requirement provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. 12101 et seq.], Title V of the Rehabilitation Act of 1973 [29 U.S.C. 790 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (alterations in original).

In *Payne v. Peninsula Sch. Dist.*, the Ninth Circuit adopted a "relief-centered" approach that district courts should employ when determining whether a plaintiff must meet IDEA's exhaustion requirements. 653 F.3d 863, 874 (9th Cir.2011). Under this approach, "IDEA's exhaustion provision applies only in cases where the relief sought by a plaintiff in the pleadings is available under the IDEA." *Id.* at 871. The Ninth Circuit further clarified that "when determining whether the IDEA requires a plaintiff to exhaust, courts should start by looking at a complaint's prayer for relief and determine whether the relief sought is also available under the IDEA. If it is not, then it is likely that § 1415(l) does not require exhaustion in that case." *Id.* at 875.

More recently, the Supreme Court addressed this same interplay between IDEA exhaustion and other federal statutes. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743 (2017). In *Fry*, the Supreme Court stated that "[t]he only relief that an IDEA officer can give—hence the thing a plaintiff must seek in order to trigger § 1415(l )'s exhaustion rule—is relief for the denial of a FAPE." *Id.* at 753. The Supreme Court therefore found that the "exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate education. If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(1) merely by bringing [] suit

under a statute other than the IDEA." *Id.* at 754. Thus, the critical factor for courts to consider is whether "the gravamen of a complaint seeks redress for a school's failure to provide a FAPE." *Id.* at 755. If the gravamen of the complaint concerns something other than the denial of a FAPE, then no exhaustion is required. *Id.*

In analyzing the gravamen of the complaint, the Supreme Court offered three "clues" for courts to look for: (1) whether the plaintiff could have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school; (2) whether an adult at the school could have pressed essentially the same grievance; and (3) whether parents, before filing suit under the ADA or the Rehabilitation Act, began to pursue but then abandoned IDEA's formal procedures. *Id.* at 756–57.

Here, the Court finds that the gravamen of the Complaint does not seek redress for the school's failure to provide a FAPE. Notably, the complaint makes no direct reference to the adequacy of the special education services provided at the Students' school. Rather, Plaintiffs' claims focus almost exclusively on the injuries caused by the alleged discrimination and abuse. In this sense, Plaintiffs' allegations would be actionable whether the conduct occurred at a non-school public facility or against adults. While Plaintiffs do concede some of the Parents initially sought relief through IDEA's formal procedures, this factor alone is insufficient to alter the gravamen of the complaint. *See Fry*, 137 S. Ct. at 757 (acknowledging that a plaintiff may abandon IDEA procedures after realizing that their grievance involves something other than a FAPE complaint). Based on the Complaint, it appears likely that the Parents pursued relief through IDEA procedures before being fully aware of the extent of Doran's alleged abuse.

Defendants do not contest that the relief sought in the Complaint does not facially concern the deprivation of a FAPE. Rather, Defendants argue that two specific statements in the Complaint indicate that Plaintiffs' claims are actually based on denial of a FAPE. (*See* Mot. to Dismiss 9:9–19). The first statement that Defendants take issue with is that "[b]y subjecting

the minor plaintiffs to ongoing physical and verbal abuse, L.M.V., M.H., and S.S. were unable to enjoy the benefits of education." (Am. Compl. ¶ 114). With respect to this statement, however, Plaintiffs are not challenging the quality or accessibility of the FAPE itself but rather the Students' ability to benefit from the FAPE in light of the abuse. Therefore, the focus of this allegation is still on the impact of the alleged abuse and not the failure to provide a FAPE. The second statement that Defendants take issue with is that Doran's conduct was "objectively unreasonable under the circumstances and in light of the educational objectives L.M.V., M.H., and S.S. were trying to achieve." (*Id.* ¶ 104). Again, the focus of Plaintiffs' statement is not on the deprivation of a FAPE. Rather, the statement only references educational objectives insofar as it highlights the alleged unreasonableness of Doran's actions. Based on the above, the Court finds that the gravamen of the Complaint does not seek redress for the failure to provide a FAPE, and therefore administrative exhaustion is not required in this case.

**B. Failure to State a Claim—Federal Law Claims**

*1. Americans with Disabilities Act and Rehabilitation Act*

Defendants next argue that the Complaint fails to state a claim under the Americans with Disabilities Act ("ADA") and Rehabilitation Act. (*See* Mot. to Dismiss 13:16–14:15). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied access to or benefit of any services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, a plaintiff must allege that he is a "qualified individual with a disability" and that the defendant denied him benefits or services "by reason of" his disability. *Duvall v. Cty. Of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001); 42 U.S.C. § 12132. Furthermore, to state a claim for money damages, a plaintiff must allege that the defendant was "deliberately indifferent" to the discrimination. *Id.* at 1138. In the context of education, deliberate indifference means that the school district knew that harm to a federally

protected right was "substantially likely" but failed to act. *Id.* The elements of a Rehabilitation Act claim do not differ in any relevant respect and therefore can be addressed together. *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

Defendants argue that Plaintiffs fail to identify "CCSD's alleged wrongful acts, [and instead] the Complaint summarily concludes that CCSD was deliberately indifferent to claims of abuse." (Mot. to Dismiss 14:7–10). According to Defendants, "there are no facts to support Plaintiffs' conclusion that CCSD's acts were motivated based on disability discrimination simply because the Plaintiffs were special education students." (*Id.* 14:10–14). The Court disagrees. Defendants' contention ignores the well-established rule that a public entity may be held liable in respondeat superior for the acts of its employees. *Duvall*, 260 F.3d at 1141.

To that end, Plaintiffs allege that Paquette and Keller were deliberately indifferent by allowing Doran's abuse against disabled students to continue for months and misleading the Parents as to the extent of the abuse. (*Id.* ¶¶ 118, 119); s*ee Roe v. Nevada*, 332 F. Supp. 2d 1331, 1341 (D. Nev. 2004) (finding ADA claims established by allegations that defendants had notice of the alleged student abuse and yet failed to act). This assertion is premised on the theory that non-disabled children were not subjected to the same acts of abuse and inequality. (*Id.* ¶ 114, 115).

In Reply, Defendants argue that, even if vicarious liability applied, Plaintiffs have failed to plead that the CCSD employees were acting in the course and scope of their employment. (Defs.' Reply 8:17–27, ECF No. 25). The Court again disagrees. As alleged, Paquette and Keller were plausibly acting in the scope of their employment by meeting and communicating with the Parents regarding the abuse allegations. (*See* Am. Compl. ¶ 34). Furthermore, with respect to Doran, it is plausible that acting as a special education teacher would occasionally necessitate a level of non-aversive physical contact or verbal force as part of his duty to "exercise control" over the classroom. To the extent Doran exceeded that force, the Court

cannot determine at this time that Doran's actions fell outside the scope of his employment. *See Ray v. Value Behavioral Health, Inc*. 967 F. Supp. 417, 422 (D. Nev. 1997) (determining that scope of employment issue could not be resolved at motion to dismiss phase because no fact discovery regarding the scope of employment had been developed). Accordingly, the Court denies Defendants' Motion to Dismiss as to the ADA and Rehabilitation Act claims.

*2. Violation of Constitutional Rights Under 42 U.S.C. § 1983*

Defendants argue that the section 1983 claim fails because the Plaintiffs have not alleged that a CCSD policy "led to the violations of Plaintiffs' rights by Doran." (Mot. to Dismiss 12:2–6). In Response, Plaintiffs concede that "the basis of the claim against CCSD for violation of Plaintiffs' constitutional rights should be clarified." (Response 15:9–12). Accordingly, the Court grants dismissal of this claim without prejudice.[2]

**C. Failure to State a Claim—State Law Claims**

*1. Battery*

Defendants argue that CCSD cannot be liable for battery because Plaintiffs have failed to sufficiently allege vicarious liability. (Mot. to Dismiss 14:19–15:2). In Nevada, an employer may be held vicariously liable for the tortious conduct of its employees when the employees' conduct was in furtherance of their employment or within the scope of their employment. *Wood v. Safeway, Inc.*, 121 P.3d 1026, 1036 (Nev. 2005). As explained above, the Court finds that Plaintiffs have alleged sufficient facts to plausibly establish that Doran was acting within the scope of his employment. A more detailed argument on the actual merits of this issue is

---

[2] As the Court is dismissing this claim without prejudice, the Court finds it premature to rule on Defendants' qualified immunity argument. With respect to Defendants' argument concerning Paquette and Keller "acting in their official capacity," the Complaint does not indicate that those parties are sued in their official capacity. Therefore, Defendants' argument is moot.

premature at this stage. *See Ray*, 967 F. Supp. at 422. The Court therefore denies Defendants' Motion to Dismiss as to this claim.

### 2. *Intentional Infliction of Emotional Distress*

Defendants argue that the Parents do not have standing to bring a claim for intentional infliction of emotional distress ("IIED") against Doran and vicariously against the CCSD. (Mot. to Dismiss 16:9–14). In Nevada, a third-party bystander may recover on an IIED claim if the bystander has a sufficiently "close relationship" with the victim and witnessed the incident. *Star v. Rabello*, 625 P.2d 90, 92 (1981); *see also Cardinale v. La Petite Acad., Inc.*, 207 F. Supp. 2d 1158, 1161 (D. Nev. 2002) (holding that parents could not recover under IIED for alleged abuse of their children at preschool absent allegations that they witnessed the abuse). Here, the Complaint contains no allegations that the Parents personally witnessed any of the alleged abuse. Accordingly, the Court grants dismissal of the Parents' IIED claim against Doran and against CCSD to the extent it is premised on Doran's conduct.

Defendants additionally argue that Plaintiffs fail to state an IIED claim as to Paquette and Keller. (Mot. to Dismiss 16:15–17). To establish a claim of IIED a plaintiff must demonstrate that: (1) a defendant engaged in "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) [the plaintiff] suffered severe or extreme emotional distress; and (3) actual or proximate causation." *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community"; however, this description does not encompass acts which are merely "inconsiderate" or "unkind." *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (Nev. 1998).

Here, the core of Defendants' arguments is that "Plaintiffs' claim relies solely on allegations that the CCSD Defendants' response to unidentified and unknown acts of abuse by Doran was insufficient." (Mot. to Dismiss 17:6–10). This argument, however, is directly

contradicted by the allegations in the Complaint. Specifically, the Complaint alleges that Paquette and Keller knew of the abuse, withheld information as to the extent of the abuse from the parents, and withheld information even in light of the criminal investigation. (*See* Am. Comp. ¶¶ 31, 34, 148–149). Taking these allegations as true, the Court finds that knowingly withholding information and allowing a potentially abusive teacher to continue interacting with the Students plausibly gives rise to an IIED claim. The Court therefore denies Defendants' Motion to Dismiss on this aspect of Plaintiffs' IIED claim.

### 3. *Negligence and Negligent Supervision*

Defendants argue that Plaintiffs' "failure to warn" negligence claim fails to state a claim. (Mot. to Dismiss 17:12–18). Additionally, Defendants argue that Plaintiffs' negligent supervision claim fails because the Complaint does not establish a causal link between Defendants' supervision and Doran's abuse.[3] (*Id.* 19:5–7).

Liability for a failure to warn claim exists where there is a special relationship between the parties and the danger is foreseeable. *See Mangeris v. Gordon*, 580 P.2d 481, 483 (Nev. 1978). Moreover, liability for negligent supervision exists where: (1) the employer knew the employee acted in a negligent manner; (2) the employer failed to train or supervise the employee adequately; and (3) the employer's negligence proximately caused the plaintiffs injuries. *Helle v. Core Home Health Servs. of Nevada*, 238 P.3d 818 (Nev. 2008).

Here, Defendants do not contest that a special relationship exists between the parties. Rather, Defendants argue that they "had no knowledge of abuse, only a concern regarding improper restraint of which the Parent Plaintiffs were notified." (Mot. to Dismiss 18:4–6). This argument fails for the same reasons already discussed previously in this Order. Plaintiffs have sufficiently alleged that Defendants had knowledge of the abuse, and therefore the danger to the

---

[3] While the Complaint includes allegations related to Doran's hiring, the stated cause of action is only for "negligent supervision." Accordingly, the Court limits its analysis to the negligent supervision claim.

Students was foreseeable. (*See* Am. Compl. ¶¶ 31–32, 34–37). The alleged failure to reasonably act on that knowledge gives rise to both the negligence and negligent supervision claim. The Court therefore denies Defendants' Motion to Dismiss as to these claims.

### D. Discretionary Act Immunity

Defendants argue that Paquette and Keller are entitled to discretionary act immunity with respect to the IIED, negligence, and negligent supervision claims. (*See* Mot. to Dismiss 21:5–7). In Nevada, no negligence action may be brought against an employee of the state "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032(2). Nevada looks to federal law regarding the Federal Tort Claims Act (the "FTCA") when analyzing claims of discretionary act immunity, and has adopted the *Berkovitz–Gaubert* test for determining whether a decision falls within the scope of that immunity. *Martinez v. Maruszczak*, 168 P.3d 720, 727–29 (Nev. 2007); *see also Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1066 n.50 (Nev. 2007) ("The discretionary-act immunity provision contained in NRS 41.032(2) is 'virtually identical' to the discretionary-act immunity provision found in the [FTCA], 28 U.S.C. § 2680(a) (2000)."). Under that test, in order to qualify for discretionary-act immunity, "a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Id.* at 729.

As a preliminary matter, the Court notes that discretionary act immunity does not extend to intentional torts. *See Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 139 (Nev. 2014) ("[D]iscretionary-function immunity under NRS 41.032 does not include intentional torts and bad-faith conduct"). Defendants' argument therefore fails as to the IIED claim. With respect to the negligence claims, the question then turns on whether Paquette and Keller's actions were "discretionary" in light of the fact that the very same allegations give rise to the IIED claim. Within this context, the Court finds that Paquette and Keller's alleged actions were not

discretionary. Notably, the Complaint alleges that Paquette and Keller "attempted to cover up [the Students'] abuse" by minimizing the abuse to the Parents. (Am. Compl. ¶¶ 34, 37, 148).[4] Taking the allegations as true, the Court finds that such actions are not "based on considerations of social, economic, or political policy." The Court therefore rejects Defendants' discretionary act immunity argument at this time.

### E. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit "ha[s] held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995)).

The Court finds that Plaintiffs may be able to plead additional facts to support their section 1983 claim. Accordingly, the Court will grant Plaintiffs leave to file an amended complaint. Plaintiffs shall file their amended complaint within twenty-one days of the date of this Order if they can allege sufficient facts that plausibly establish the section 1983 claim.

///

///

---

[4] The Complaint further alleges that Paquette and Keller had a legal duty to report the alleged abuse to law enforcement or a child welfare agency. (*Id.* ¶ 156–158). Defendants fail to address this allegation in their briefing. To the extent the allegation is true, however, Paquette and Keller would not be entitled to discretionary act immunity. *See Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) (stating in applying the FTCA's discretionary function exception that "in general, governmental conduct cannot be discretionary if it violates a legal mandate").

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motions to Dismiss, (ECF Nos. 20, 30), are **GRANTED in part** and **DENIED in part** consistent with the foregoing.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Supplemental Authority, (ECF No. 37), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs shall have twenty-one days from the filing of this Order to file an amended complaint. Failure to file an amended complaint by this date shall result in the Court dismissing the section 1983 claim with prejudice.

**DATED** this __29__ day of September, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge