**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

HURD, *et al.*,

        Plaintiffs,

vs.

CLARK COUNTY SCHOOL DISTRICT, *et al.*,

        Defendants.

Case No.: 2:16-cv-02011-GMN-BNW

**ORDER**

Pending before the Court is Plaintiffs' Motion for Attorney Fees and Costs, (ECF No. 178). Defendants Clark County School District ("CCSD") and Shawn Paquette (collectively, "Defendants") filed a Response, (ECF No. 188). Plaintiffs filed a Reply, (ECF No. 190).

Also pending before the Court is Plaintiffs' unopposed Motion to Seal, (ECF No. 192), regarding the Exhibits appended to the Reply in Support of the Motion for Attorney Fees and Costs. For the reasons discused below, Plaintiffs' Motion for Attorney Fees and Costs and Plaintiffs' Motion to Seal are **GRANTED**.

## I.   BACKGROUND

This case arises from Defendant James Doran ("Doran"), a CCSD teacher, allegedly abusing Plaintiffs, nonverbal students with Autism Spectrum Disorder. The parties reached a settlement agreement while Defendants' Motion for Partial Summary Judgment was pending. (*See* Min. Order, ECF No. 161). The settlement provided $400,000 to each Plaintiff from CCSD and $10,000 to each Plaintiff from Doran's insurance carrier. (*See* Mins. of Settlement Conf. ¶¶ 2–3, ECF No. 161). The settlement designated Plaintiffs as the prevailing parties and left the determination of reasonable attorney fees and costs to the Court. (*Id.* ¶ 4). The agreement capped the recoverable fees and costs at $500,000 and $425,000, respectively. (*Id.*).

Plaintiffs now move for an award of fees and costs equal to the maximum amount allowed by the parties' settlement agreement. (*See* Mot. Att'y Fees and Costs, ECF No. 178).

## II. LEGAL STANDARD

### a. Motion for Attorney Fees and Costs

Pursuant to Federal Rule of Civil Procedure 54(d), a prevailing party may seek an award of attorney fees and costs. Fed. R. Civ. P. 54(d). When a party seeks a fee award under a federal fee-shifting statute, the court determines the award using the "lodestar method." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (internal citation omitted). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Id.*; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (enumerating the "*Kerr* factors" district courts may consider to adjust the lodestar).

The party seeking fees bears the burden to submit evidence supporting the rates claimed and the hours worked. *Hensley*, 461 U.S. at 433; see also *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992). In reviewing a motion for attorney fees, the court will rely on its own experience to determine whether the amount requested is reasonable. *See Hensley*, 461 U.S. at 437; *see also Ilick v. Miller*, 68 F. Supp. 2d 1169, 1176 (D. Nev. 1999).

1       The prevailing party is presumptively "entitled to reasonable costs." LR 54-1(a); *see also* Fed. R. Civ. P. 54(d)(1). The losing party may rebut this presumption by "establish[ing] a reason to deny costs." *Dawson v. City of Seattle*, 435 F.3d 1054, 1070 (9th Cir. 2006).

### b. Motion to Seal

A motion to seal is governed by Federal Rule of Civil Procedure 26(c), which provides that, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). When evaluating a motion to seal documents attached to a non-dispositive motion, the court considers whether "'good cause' exists to protect th[e] information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678–79 (9th Cir. 2010) (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002)). The court may grant a motion to seal in its discretion, but it must provide its reasoning in deciding the motion. *Id.* at 679.

## III. DISCUSSION

### a. Attorney Fees

The Court concludes that Plaintiffs have requested fees for a reasonable number of hours worked; however, the hourly rates sought for some members of Plaintiffs' legal team are unreasonable. Nevertheless, the Court's loadstar calculation indicates that Plaintiffs should receive $500,000 in attorney fees.

In their Motion, Plaintiffs argue that they are entitled to an attorney fee award as the prevailing parties because they brought claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and 42 U.S.C. § 1983, each of which contains a fee-shifting provision. (Memorandum in Support of Mot. for Fees and Costs ("Mot. for Fees") 9:1–11, Ex. 1 to Mot. for Att'y Fees and Costs, ECF No. 178). Plaintiffs staffed the case with five

attorneys and four paralegals.  They allege that based on the experience, skill, and reputation of attorneys Peter Alfert ("Alfert"), Todd Boley ("Boley"), Marianne Lanuti ("Lanuti"), Ian Hansen ("Hansen"), and Justin Young ("Young") the attorneys should receive hourly rates of $700, $700, $450, $425, and $400, respectively. (*Id.* 11:26–16:14).  Plaintiffs also allege that the Court should award an hourly rate of $250 for their paralegals. (*Id.* 16:15–25).  Based on the detailed records submitted to the Court, Plaintiffs allege that the lodestar figure equals $687,601.93, after deducting travel expenses and reducing the number of hours billed by 5% to offset any duplicative efforts or billing errors. (*Id.* 11:20–25, 16:26–23, 20:22–21:4).

Defendants argue that Plaintiffs should be awarded no more than $175,000 in attorney fees. (*See* Resp. to Mot. for Fees ("Resp.") 31:4–9, ECF No. 188).  Defendants contend that the Court should award less than requested because Plaintiffs' attorneys are not entitled to California rates, they won a modest award relative to the damages sought, engaged in block billing, overstaffed the case, requested unreasonably high rates, billed time to develop a playbook for use in later cases, executed duplicative work, and manufactured unnecessary discovery disputes that took longer to resolve than necessary. (*Id.* 5:20–7:4).  The Court now turns to the lodestar calculation.

      i. <u>Plaintiffs' Attorneys' Reasonable Hourly Rates</u>

When calculating the loadstar, the Court must determine the reasonable hourly rate for the prevailing party's attorneys and paralegals. *Gonzales v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013).  Generally, a reasonable hourly rate is the prevailing market rate "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984).  The relevant community is generally "the forum in which the district court sits." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)).  However, the relevant prevailing market rate may be that of another

forum "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

### 1. *Attorneys Alfert and Boley*

Plaintiffs allege that Alfert and Boley are entitled to the prevailing market rate for counsel of comparable skill, experience, and reputation in the Bay Area of California, which is $700 per hour. (Mot. for Fees 13:1–7; 13:23–15:2). They allege—with a supporting affidavit from a Las Vegas civil rights litigator—that no local counsel has the skill required to handle civil rights cases involving nonverbal special needs children who have been abused by their teachers. (*Id.* 13:8–15) (*see also* Lichtenstein Decl., ECF No. 180).[1] Even if attorneys in the forum had the skills to take such cases, Plaintiffs argue that the substantial expense involved in litigating these cases limits the number of attorneys willing to take the work. (*See* Alfert Decl. ¶ 16, ECF 179); (*see also* Lanuti Decl. ¶¶ 10–12). Meanwhile, Alfert and Boley have over 80 years of combined experience in complex civil rights and torts litigation, and their practices have recently focused on cases involving abuse of children with special needs. (*Id.* 13:2–7; 13:23–15:2). They have represented over 50 families in such cases. (*Id.* 13:1–7).

Defendants argue that Alfert and Boley are not entitled to Bay Area rates because many local attorneys have represented students in cases alleging abuse. (Resp. 20:9–14). Defendants also contend that Alfert and Boley have not demonstrated the skills they have that differentiate them from local counsel, and their experience with these abuse cases is limited because they only began representing special needs children in 2012. (*Id.* 20:16–21:2). Accordingly,

---

[1] In relevant part, Mr. Lichtenstein explains that he is "familiar with the attorneys who bring civil rights claims in this community," and no attorneys in the community have the "deep understanding of the law governing claims under § 1983, the ADA and the Rehabilitation Act" in addition to "familiarity with the administration of special education programs" necessary to successfully execute discovery and prove causation and damages in such cases. (Lichtenstein Decl. ¶¶ 11–12).

Defendants argue that the Court should award Alfert and Boley rates of $330 and $300 per hour, respectively, which is in line with Defense counsels' rates. (*Id.* 12:16–22:20)

The Court concludes that $700 is the reasonable hourly rate for Alfert and Boley. Plaintiffs' citations to recent cases deciding motions for attorney fees in the Bay Area establish that $700 per hour is reasonable for attorneys of Alfert and Boley's experience. (*See* Mot. for Fees 13:23–14:2). The more challenging question for the Court is whether Plaintiffs have met their burden to demonstrate that capable local counsel was unavailable.

Although the supporting evidence is thin, the Court concludes that Plaintiffs have met their burden. It is difficult to prove causation and damages in cases alleging abuse of nonverbal children with autism because the survivors cannot communicate what happened to them. (Alfert Decl. ¶ 16, ECF No. 179); (*see also* Lichtenstein Decl. ¶ 11–12). No counsel in the forum specializes in taking these cases, and the necessary expense incurred to retain autism experts and combat an aggressively litigious defendant in CCSD discourages local counsel from taking cases like this. (Lanuti Decl. ¶¶ 10–12, 20). Even if a small handful of local attorneys have taken similar cases, it appears that no local attorney has handled more than one such case, and local attorneys' experience litigating these cases therefore pales in comparison to that of Alfert and Boley. (*See* Alfert Decl. ¶¶ 16–22); (*see also* Resp. 20:11 n.23). Plaintiffs' declarations credibly establish that no local counsel has the "deep understanding of the law governing claims under § 1983, the ADA and the Rehabilitation Act" necessary to effectively bring these cases. (Lichtenstein Decl. ¶ 11). Therefore, Plaintiffs have presented sufficient evidence to shift the burden of rebuttal to Defendants to present evidence disputing either the reasonableness of Alfert and Boley's requested rate or the alleged unavailability of local counsel.

Defendants have not met their burden to produce evidence rebutting Alfert and Boley's claim for Bay Area rates. Defendant produces no declarations of local attorneys claiming that

they were available and had the requisite experience to take this case. Nor do they proffer declarations casting doubt on the unique challenges these cases present, which Plaintiffs allege require special skills and experience to successfully navigate. Rather, the only evidence Defendants provide in rebuttal is a footnote of purportedly similar cases that have been handled by local counsel. (*See* Resp. 20:11 n.23). Not only does the footnote fail to establish the availability of local counsel, but only four of the cases cited involved abuse of minors with special needs. (*See id.*) (citing *Phipps v. Clark County Sch. Dist.*, No. 2:13-cv-00002-GMN-PAL; *Martin v. Thielman*, No. 2:17-cv-01042-APG-VCF; *Thomas v. Clark County Sch. Dist.*, No. 2:19-cv-00282-AGP-PAL; *Ferguson v. Clark County Sch. Dist.*, No. 08-cv-00031-JCM-GWF). In only one of the cases, *Ferguson*, did counsel demonstrate a knowledge of the law approaching that of Plaintiffs' counsel, which enabled them to allege causes of action under § 1983, the ADA, and the Rehabilitation Act.[2] However, even in *Ferguson*, plaintiffs retained California counsel. (*See Ferguson*, No. 08-cv-00031-JCM-GWF, Verified Petitions for Permission to Practice Pro Hac Vice, ECF Nos. 6–7). Thus, Defendants have not satisfied their burden to provide evidence rebutting Plaintiffs' entitlement to Bay Area rates.

### 2. *Attorney Lanuti*

Plaintiffs argue Lanuti should receive an hourly rate of $450 for her work because that is the market rate for lawyers of her experience in Nevada. (Mot. for Fees, 15:3–19); (*see also* Lanuti Decl. ¶¶ 4–18, 23, Ex. 11 to Alfert Decl., ECF No. 179) (describing her experience and noting that her standard rate is $450 per hour). Defendants respond that she should receive between $250 and $325 per hour because $325 is her standard rate for administrative claims against CCSD, and she billed 96 hours to be present at depositions she did not take or defend. (Resp. 22:21–25).

---

[2] The knowledge to bring each claim is critical because each claim has different elements, and a plaintiff may prevail on one claim but not the others. (*See* Second Am. Compl. ¶¶ 112–144, ECF No. 65)

The Court concludes that Lanuti should receive $450 for her work. The Court begins its lodestar rate analysis by determining the reasonable hourly rate in the forum, not the rate the attorney charges. *United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008).[3] Defendants have not met their burden to submit evidence rebutting Plaintiffs' citations establishing that $450 per hour is a reasonable rate for attorneys of Lanuti's experience in Las Vegas.

3. *Attorneys Hansen and Young and Paralegals*

Plaintiffs assert that Hansen and Young should receive the rates for associates of their experience in the Bay Area, $425 and $400, respectively. (Mot. for Fees, 15:20–14). They also argue that the paralegals should receive reasonable Bay Area rates, $250 per hour. (*Id.* 16:15–25). Defendants argue that Hansen, Young, and the paralegals should receive Las Vegas rates. (Resp. 22:25–23:4). The Court concludes that Plaintiffs have not satisfied their burden to demonstrate that attorneys in the forum were unavailable who could perform the work undertaken by Hansen and Young. Nor do they allege that paralegals in the forum capable of doing the work were unavailable. Therefore, Hansen and Young should receive the rates for associates of their experience in Las Vegas: $250. *See Topolewski v. Blyshak*, No. 2:16-cv-01588-JAD-NJK, 2018 U.S. Dist. LEXIS 38740 (D. Nev. March 8, 2018). The paralegals should likewise receive reasonable Las Vegas rates: $160. *See Trustees of the Teamsters Local 631 Sec. Fund. of S. Nev. v. Beavers*, No. 2:13-cv-00824-GMN-NJK, 2014 U.S. Dist. LEXIS 42149 (D. Nev. Feb. 6, 2014) at *12.

ii. Hours Worked

When calculating the lodestar, the court should credit the prevailing party's attorney with a reasonable number of hours for which to be compensated. *Gonzales v. City of Maywood*,

---

[3] Even if the Court considered Lanuti's typical rate, her typical rate is the rate requested: $450 per hour. (Lanuti Decl. ¶ 23).

729 F.3d 1196, 1202 (9th Cir. 2013). The prevailing party retains the burden to submit billing records in support of its claim for hours worked. *Id.* The hours worked by the prevailing party's attorney are reasonable if the hours "could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The Ninth Circuit has noted, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id.* at 1112.

Plaintiffs allege that their counsel and paralegals worked for the following amounts of time, after a 5% voluntary reduction in hours worked:

| Attorney/Paralegal | Adjusted Hours Worked |
|---|---|
| Peter Alfert | 292.51 |
| Todd Boley | 100.05 |
| Marianne Lanuti | 212.32 |
| Ian Hansen | 538.65 |
| Justin Young | 37.74 |
| Lori Lockhart | 145.16 |
| Candice Sanella | 81.13 |
| Assal Badrakhani | 26.51 |
| Andrea Stauber | 40.19 |

(Mot. for Fees 20:24–21:4). Plaintiffs submit time sheets in support of the alleged hours worked. (Time Records of Todd Boley, Justin Young, and Candice Sanella, ECF No. 178-4); (Time Records of Peter Alfert, ECF No. 179-1); (Time Records of Lori Lockhart and Assal Badrkhani, ECF No. 179-4); (Time Records of Ian Hansen, ECF No. 179-10); (Time Records of Marianne Lanuti, ECF No. 179-13); (Time Records of Andrea Stauber, ECF No. 179-16).

Defendants argue that the number of hours claimed is unreasonable. (Resp. 23:10). Specifically, Defendants contend that: (1) Plaintiffs failed to provide a reasonable itemization of their time; (2) Plaintiffs engaged in block billing; (3) Plaintiffs entered some of their time long after they performed the work; (4) Plaintiffs unreasonably overstaffed the case and engaged in duplicative work; (5) Plaintiffs over litigated the case and engaged in work that could have been avoided; (6) Plaintiffs billed for matters that are not billable; and (7) counsels' fees should be reduced by 40% to reflect the degree of success achieved relative to the recovery sought in the Complaint. (*Id.* 23:10–30:4). The Court will address each of Defendants' arguments in turn.

1. *Itemization and Block Billing*

Plaintiffs' billing records provide the requisite itemization and description of the work performed. Plaintiffs have not engaged in block billing. Block billing is "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996). Plaintiffs' billing records are itemized, and the records allow the Court to "make a fair evaluation of the time expended, the nature and need for the service[s], and the reasonable fees to be allowed." *See United Steelworkers of Am. v. Ret. Income Plan For Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (internal quotation omitted).

2. *Reliability of Time Entries*

Defendants argue that all of Plaintiffs' time entries are inherently unreliable. Defendants suspect that Plaintiffs created time entries for the purpose of their Motion for Fees because one entry describes an incident of Defendants' counsel's alleged misconduct, which Defendants believe Plaintiffs entered after the fact to try and persuade the Court. (Resp. 25:3–11). Even if the entries are framed argumentatively, the Court is not persuaded and does not believe the time

billed is inaccurate. Even if Plaintiffs did reconstruct some of their time entries, that alone does not support a reduced fee award. *See Bonnette v. Cali. Health and Welfare Agency*, 704 F.2d 1465, 1473 (9th Cir. 1983) (awarding fees based on reconstructed billing records was not an abuse of discretion).

### 3. *Duplicative Efforts*

Defendants have not satisfied their burden to provide specific evidence that counsel engaged in duplicative efforts. While Defendants have shown that multiple members of Plaintiffs' team worked on the same matters, they have not demonstrated that the efforts were duplicative rather than collaborative. Employing multiple attorneys to work on the same matter does not demonstrate that the attorneys engaged in unreasonably duplicative work. *See Mendez v. County of San Bernardino* 540 F.3d 1109, 1129 (9th Cir. 2008). Even if counsel engaged in some duplicative effort, the Court is satisfied that a 5% reduction in hours sufficiently offsets any error. *Cf. Nat'l Fed'n of the Blind v. Target Corp.*, No. C 06-1892 MHP, 2009 LEXIS 67139, at *13 (N.D. Cal. Aug. 3, 2009) ("Defendant challenged a number of insufficiently documented time entries, which the plaintiffs have agreed to offset by a five percent voluntary reduction in their merit-based fees. This voluntary reduction is sufficient to offset the flawed time entries identified.").

### 4. *Unnecessary Discovery*

Defendants allege that Plaintiffs engaged in unnecessary discovery through "excessive written discovery requests and deposing fifteen lay witness [sic] with multiple attorneys present." (Resp. 27:25–26). They also allege that Plaintiffs billed 122 hours for "self-manufactured discovery disputes." (*Id.* 27:27–28:2). Plaintiffs reply that, like Defendants, they had two attorneys attend each deposition, which is compensable. (Reply 7:23–8:4) (citing *Kelly v. Wengler*, 822 F.3d 1085, 1105 (9th Cir. 2016)). The Court concludes that Plaintiffs did not engage in unreasonable discovery.

5. *Specific Objections*

Defendants make specific objections to several billed tasks that "CCSD should not have to pay for." (*See* 28:3–17). Defendants provide no legal authority explaining to the Court why the Court should not require Defendants to pay for Ms. Lanuti's consulting, Plaintiffs' basic legal research, investigation of public records, administrative tasks, or Plaintiffs' Motion for Fees. (*See id.*). The Court is concerned with Defendants' objection to Ms. Lanuti double billing for processing the minor Plaintiffs' administrative claims. (*See id.* 28:5–6). However, Defendants have failed to meet their burden to provide evidence to the Court that the time was in fact double billed. Even if the time was double billed, Plaintiffs' 5% reduction in hours requested and waiver of travel time offsets the potentially excessive billing.

6. *Degree of Success*

Finally, Defendants argue that Plaintiffs' counsel should face a 40% reduction of the loadstar because of the degree of success they obtained relative to the recovery sought in the Complaint. (*See id.* 28:18–30:4). They argue that Plaintiffs only recovered 3%, or $1,200,000, of the $35,871,403 sought, which demonstrates that they did not attain a successful result. (*Id.* 29:3–10).

When calculating the loadstar, the district court may reduce a fee award based upon the degree of success attained. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In determining the prevailing party's degree of success, "[t]he district court must determine the extent to which the plaintiff prevailed and adjust the fee request accordingly." *LeMaire v. Maass*, 12 F.3d 1444, 1461 (9th Cir. 1993). While the Court may consider the number of claims upon which Plaintiff prevailed relative to the number alleged in the Complaint or the total recovery awarded relative to the damages sought, neither consideration is dispositive. *See City of Riverside v. Rivera*, 477 U.S. 561, 575–580 (1986) (plurality opinion). Rather, the court may consider the complexity of the case or its benefit to the public in deterring future civil rights violations. *Id.*

The Court concludes that Plaintiffs obtained an excellent result. While the settlement award is slight when compared to the amount of damages sought in the Complaint, an award greater than $1,000,000 cannot be deemed nominal. Even if the settlement award is slight relative to the damages sought in the Complaint, the award confers a substantial public benefit. Mistreatment of children with special needs within CCSD has been alarmingly common. (*See* Alfert Decl. ¶ 17, ECF No. 179) (noting that 69 incidents of CCSD employees abusing special needs children were reported between May 2012 and May 2015). The settlement award encourages CCSD and other educational institutions to take complaints about the mistreatment of children with autism seriously. Therefore, the Court declines to reduce the loadstar amount based on Plaintiffs' degree of success.

### iii. Calculation of the Loadstar

Based upon the appropriate reasonable hourly rates for Plaintiffs' legal team and the number of hours they reasonably worked, the Court finds that the loadstar is $561,311.90.

| Attorney/Paralegal | Hours Worked (After 5% Voluntary Reduction | Hourly Rate ($) | Loadstar ($) |
|---|---|---|---|
| Peter Alfert | 292.51 | 700 | 204,757.00 |
| Todd Boley | 100.05 | 700 | 70,035.00 |
| Marianne Lanuti | 212.32 | 450 | 95,544.00 |
| Ian Hansen | 538.65 | 250 | 134,662.50 |
| Justin Young | 37.74 | 250 | 9,435.00 |
| Lori Lockhart | 145.16 | 160 | 23,225.60 |
| Candice Sanella | 81.13 | 160 | 12,980.80 |
| Assal Badrakhani | 26.51 | 160 | 4,241.60 |
| Andrea Stauber | 40.19 | 160 | 6,430.40 |
| **TOTAL** | **$561,311.90** | | |

The Court finds no reason to adjust the loadstar amount based upon the *Kerr* factors. Therefore, Plaintiffs should receive the total fees capped by the settlement agreement: $500,000.[4]

**b. Costs**

The Court finds that Plaintiffs should receive the costs requested to the extent allowed by the parties' settlement agreement. A prevailing party is generally entitled to recover reasonable costs. LR 54-1; *see also Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994). Federal Rule of Civil Procedure 54(d) establishes "a presumption that the prevailing party will be awarded its taxable costs." *Dawson v. City of Seattle*, 435 F.3d 1054, 1070 (9th Cir. 2006). The losing party may rebut the presumption by "establish[ing] a reason to deny costs." *Id.* Federal fee-shifting statutes allow the court to award costs to a prevailing party if the costs would generally be billed to a paying client separately from the attorney's hourly rate. *See Grove v. Wells Fargo Fin., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). The court may award such costs under federal fee-shifting statutes even if the costs would ordinarily not be taxable. *Id.* Accordingly, limitations on taxable costs under local rules of practice do not restrict the taxable costs under federal fee-shifting statutes. *See, e.g.*, *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005).

Plaintiffs submit records demonstrating that they incurred $428,444.68 in costs. (Mot. for Fees 21:10–25); (Total Costs Spreadsheet, Ex. 5 to Mot. for Fees). Defendants unsuccessfully object to many requested costs by alleging that the costs are not allowed under the Local Rules. (*See* Resp. 30:15–19); (Mot. for Fees 21:27–22:8). Given that the costs are allowed under federal fee-shifting statutes,[5] Defendants only have two viable arguments in

---

[4] Even if the Court were inclined to reduce the loadstar based upon Defendants' protestations, it would do so by no more than an additional 10%. Thus, Plaintiffs would still receive the full amount of fees allowed under the settlement agreement.

[5] Or, at least, Defendants have not argued that a client would not ordinarily be billed for the costs.

opposition to Plaintiffs' request for costs. First, Defendants argue that Plaintiffs should not receive the $324,746.12 they have requested for expert costs because the experts did not testify about whether Defendants violated the ADA, and some of Plaintiffs' requested expert costs are "exorbitant." (Resp. 30:9–12). Second, Defendants argue that Plaintiffs "over inflated their deposition costs ($73,567.14) by representing that their elective orders for certified original and copies of depositions transcripts and videos were 'deposition costs.'" (*Id.* 30:19–22).

Defendants arguments are unpersuasive. Autism behavioral experts are not expected to testify about their legal opinions regarding whether Defendants violated the ADA. Rather, their testimony may be helpful to establish elements of an ADA violation, particularly causation and damages. Defendants have not adequately alleged that there was not a reasonable need for the experts' testimony, nor that the costs would not ordinarily be billed to a private client. Even if the expert costs are high, Defendants have not met their burden to establish that the costs are unreasonable.

Likewise, Defendants have not met their burden to successfully oppose the challenged deposition costs. Defendants state the costs Plaintiffs allegedly inflated, but they do not direct the Court to where the costs are itemized in Plaintiffs' exhibits.[6] Even if the Court knew the particular value of the objectionable costs, Defendants have not successfully argued that the costs are unreasonable or would not generally be charged to a private client. Therefore, the Court finds that Plaintiffs should receive the full costs allowed by the parties' settlement agreement: $425,000.

**c. Motion to Seal**

For good cause shown, the Court grants Plaintiffs' Motion to Seal. Plaintiffs request the Court seal Exhibits A–G to Alfert's Declaration in Support of Plaintiffs' Reply in Support of

---

[6] "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

the Motion for Fees and Costs. (Mot. to Seal, ECF No. 191).  Exhibits A–D contain confidential medical information of Plaintiffs, minor children. (*Id.* 1:10–25).  Exhibits E–G are Plaintiffs' attorneys' retainer agreements, which contains the full names of the minors and confidential terms of their legal representation. (*Id.* 1:26–2:2).  The Court finds that the need to protect the confidential information of minors and their legal representation outweighs any need for discovery of the information.  Accordingly, the Court grants the Motion.  The Court therefore orders Plaintiffs to re-file a redacted version of the sealed exhibits.

**IV.  CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Attorney Fees and Costs, (ECF No. 178), is **GRANTED**.  Plaintiffs are entitled to an award of $500,00 in attorney fees and $425,000 in costs.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Seal, (ECF No. 191), is **GRANTED**.  Plaintiffs shall re-file a redacted version of the sealed exhibits.

The Clerk of Court shall close the case and enter judgment accordingly.

**DATED** this __2__ day of December, 2019.

_____
Gloria M. Navarro, District Judge
United States District Court